## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**ON LOCATION, INC.,**

Plaintiff,

v.

**JEFFREY POPOVICH**, *et al.*,

Defendants.

No. 22-00893

OPINION

---

John P. Quirke
JOHN P. QUIRKE AND ASSOCIATES, LLC
376 Harlingen Rd
Belle Mead, NJ 08502

*On behalf of Plaintiff On Location, Inc.*

Elizabeth Ann Carbone
COLE SCHOTZ PC
25 Main Street
Court Plaza North
Hackensack, NJ 07601

*On behalf of Defendant Jeffrey Popovich.*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion to Dismiss by Defendant Jeffrey Popovich seeking the dismissal of Plaintiff On Location, Inc.'s ("On Location") Amended Complaint in its entirety. (ECF No. 14). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

1

## I.      FACTS AND PROCEDURAL HISTORY[1]

Defendant Jeffrey Popovich began employment with Plaintiff On Location in 2012 as a Sales Executive. (Am. Compl., ECF No. 8 ¶ 20). On Location provides labor and management services to create "sophisticated display experiences for clients at private events, trade shows, and branded environments throughout the United States." (ECF No. 8 ¶ 10). Defendant's job description included the "marketing of new clients, maintenance of existing client relationships, and oversight of projects." (ECF No. 8 ¶ 21). He was paid on a "draw against commission" basis as described in his Commission Agreement in which he would receive regular bi-weekly payments with the understanding that the commission he earned would eventually meet that amount. (ECF No. 8 ¶¶ 57–58). Commission earned in excess of his regular pay would be paid to him and, conversely, if his commissions fell below his earnings, he would owe money to On Location. (ECF No. 8 ¶ 59).

On Location promoted Defendant to Senior Sales Executive—one of its highest-ranking positions—in January 2020. (ECF No. 8 ¶¶ 23–24). The Senior Sales Executive position has access to On Location's confidential business information and trade secrets. (ECF No. 8 ¶¶ 23–24, 28). To protect the confidentiality of the information, On Location had an extensive Confidentiality Policy and required all employees with access to the information to execute a Confidentiality Agreement. (ECF No. 8 ¶¶ 25–27).

Defendant voluntarily terminated his employment, without notice, on October 4, 2021. (ECF No. 8 ¶ 40). During his employment On Location had provided Defendant with a laptop which Defendant returned when he left employment. (ECF No. 8 ¶ 30). After a forensic analysis

---

[1] Since the Motion comes before the Court under Rule 12(b)(6), the Court accepts the factual allegations in the Amended Complaint as true and will view all facts in the light most favorable to On Location as the non-moving party. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

of the laptop, On Location discovered that Defendant had connected both a smaller external storage device ("Thumb Drive") and a larger external storage device ("Portable Drive") to the laptop in the weeks and months leading up to his departure from the company. (ECF No. 8 ¶ 42). Defendant then disconnected the Portable Drive just two days before he left employment. (ECF No. 8 ¶ 38). Further analysis revealed that "Defendant was selectively diverting On Location information to the Portable Drive—including, but not limited to, the 2019 Full Year Status Report and the 2021 Projects List," as well as "thousands upon thousands of emails." (ECF No. 8 ¶¶ 36–37).

Defendant produced the Portable Drive in response to On Location's demand and forensic analysis confirmed that the Portable Drive contained confidential information including client emails, the 2019 Full Year Status Report, and the 2021 Projects List. (ECF No. 8 ¶ 45). The Portable Drive also contained client information that had not been reported in On Location's database. (ECF No. 8 ¶ 46). Forensic analysis further revealed that it was connected to another undisclosed device and "significant amounts of information (i.e., approximately 46GB of data)" were transferred to this undisclosed device, including the 2021 Project List. (ECF No. 8 ¶ 48).

Following Defendant's departure, On Location alleges that Defendant has been present at trade shows with long-standing On Location clients. (ECF No. 8 ¶¶ 49–56). On Location alleges that Plaintiff has presented displays that On Location did not create and—because of the time and detail required to make such displays—avers that Defendant was working on these projects before the termination of his employment. (ECF No. 8 ¶¶ 49–56).

Additionally, On Location has since demanded reimbursement for the payments made to Defendant during his employment based on his Commission Agreement in excess of his actual commission earnings. (ECF No. 8 ¶ 62). On Location alleges that Defendant owes it $75,000 and has failed to make any repayment. (ECF No. 8 ¶ 62).

On Location filed this action on February 18, 2022. (Compl., ECF No. 1). Defendant moved to dismiss and On Location filed an Amended Complaint on July 6, 2022. (ECF Nos. 4, 8). Defendant then filed the current Motion to Dismiss (ECF No. 14), which On Location opposed (ECF No. 25).

## II.   DISCUSSION

Plaintiff's Amended Complaint alleges a misappropriation of trade secrets under the Defense of Trade Secrets Act, 18 U.S.C. §§ 1836(b)(1) *et seq.* (Count I), and New Jersey's Trade Secrets Act, N.J.S.A. §§ 56:15-1 *et seq.* (Count II); Common Law Misappropriation of Confidential Business Information (Count III); Breach of Fiduciary Duty of Loyalty (Count IV); Interference with Prospective Economic Advantage (Count V); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VI); Conversion (Count VII); Replevin (Count VIII); and Breach of Contract (Count IX). For the following reasons, the Court will grant Defendant's Motion as to Counts III–VIII and deny as to Counts I, II, and IX.

### A.  Violations of the DTSA and NJTSA (Counts I and II)

Defendant contends that On Location has failed to allege (1) specific trade secrets, (2) that any potential confidential information fell within the definition of a trade secret, and (3) misappropriation of any such confidential information. (Motion, ECF No. 14-2 at 4–9). The Court disagrees.

To state a claim for a violation of the NJTSA or DTSA, a plaintiff must demonstrate: "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par*

*Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019).[2] "The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential." *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom. Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019) (citing *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 423 (D.N.J. 2016) (quoting N.J.S.A. 56:15-2)). A plaintiff must have taken "precautions to maintain the secrecy of the trade secret," *Mu Sigma, Inc. v. Affine, Inc.*, 2013 WL 3772724, at *8 (D.N.J. July 17, 2013), however the fact that some individual elements of the information may be knowable to the public will not defeat a claim as the "combination of elements in its own" can constitute a trade secret, *Par Pharm.*, 764 F. App'x at 278 ("while some individual elements of the APS Plan may be known in the industry, Par's combination of the elements in its own process likely constitutes a trade secret itself.") (internal quotations omitted).

First, On Location has complied with Rule 12(b)(6)'s pleading standards as it has alleged the subject of the trade secret with adequate specificity. The Amended Complaint identifies alleged confidential information and cites two specific examples of documents taken by Defendant: a 2019 Full Year Status Report (Exh. B) and a 2021 Projects List (Exh. C) which were filed with the Court under seal. (Am. Compl., ECF No. 8 ¶ 30). This is much more than the "boilerplate recitation of categories of purported trade secrets" this Court has found insufficient in other circumstances. *CLI Interactive, LLC, v. Diamond Phil's, LLC, et al.*, No. 22-01602, 2023 WL 1818381, at *3 (D.N.J.

---

[2]  Because the standards are the same, the Court will analyze these claims together. *See, e.g.*, *Am. Neighborhood Mortg. Acceptance Co., LLC v. CrossCountry Mortg., Inc.*, No. 20-00874, 2022 WL 1423090, at *6 (D.N.J. May 4, 2022) ("the analysis under the DTSA folds into that of the NJTSA") (internal quotations and citations omitted).

Feb. 8, 2023). The Court cannot see how this specific allegation could have failed to put Defendant on notice of the alleged trade secrets at issue in this case.

Second, On Location has alleged the existence of protectable trade secrets. "The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential." *Scherer Design Grp.*, 2018 WL 3613421, at *4. Based upon this Court's review of the Exhibits B and C, they contain a compilation of client names, exhibitions, project dates/locations and financial projections sufficient to meet that standard. (Exhs. B and C, Am. Compl., ECF No. 8). This is precisely the type of information the DTSA and NJTSA seek to protect. *Asset Plan. Servs., LTD. v. Halvorsen*, No. 21-2021, 2022 WL 1104060, at *7 (E.D. Pa. Apr. 13, 2022) (finding that courts in this Circuit have found that the DTSA protects "customer lists, pricing, marketing strategies and financial projections"); *see, e.g., Mallet & Co. v. Lacayo*, 19-1409, 2020 WL 6866386, at *7 (E.D. Pa. Nov. 23, 2020) (finding the DTSA protects formulas, customer information, pricing, and volume data). While Defendant is correct that the names of some of On Location's clients are listed on its website and discoverable through attendance at the events and trade shows, it is the compilation of all the clients into a single document alongside exhibition details and financial projections that makes this information non-discoverable to the public. *See Par Pharmaceutical*, 764 F. App'x at 278. On Location avers, and it equally appears from the face of these documents, that they were compiled over a significant period of time and are of critical value to its business. Further, On Location took specific steps to maintain the confidentiality of this information through limiting access to the information—even within the company—and requiring confidentiality agreements for the limited persons who had access. (Am. Compl., ECF No. 8 ¶¶ 23–27).

Third, On Location has adequately alleged misappropriation in the Amended Complaint. The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the consent of the owner by a person who "used improper means to acquire knowledge of the trade secret." 18 U.S.C. §§ 1839(5)(A)–(B)(i). On Location specifically alleges that forensic analysis shows that Defendant diverted information to the Portable Drive including the two documents listed above. (Am. Compl., ECF No. 8 ¶¶ 36, 45). On Location alleges that Defendant disconnected the Portable Drive two days before voluntarily ending his employment without notice on September 30, 2021. (ECF No. 8 ¶¶ 38–39). It further contends that the Portable Drive was connected to another unknown device on October 27, 2021 and "significant amounts of information (i.e., approximately 46GB of data)," including the 2021 Project List were transferred to this unknown device. (ECF No. 8 ¶ 48). Finally, On Location avers that Defendant was directly involved in subsequent exhibits of On Location clients under circumstances that support the conclusion that he was working on these exhibits before he left employment with On Location. (ECF No. 8 ¶¶ 55–56). These allegations, coupled with reasonable inferences therefrom, are sufficient at this stage of the litigation. *Osteotech, Inc. v. Biologic*, 2008 WL 686318, at *5 (D.N.J. Mar. 7, 2008) ("Plaintiff need not make specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets; there is no heightened pleading standard for a misappropriation claim, and Plaintiff is entitled to seek discovery to support its allegations setting forth a prima facie claim.").

Thus, the Court finds that On Location has adequately pled claims for violations of the DTSA and NJTSA. Defendant's Motion is therefore denied as to Counts I and II.

## B. Breach of Contract (Count IX)

Defendant alleges that On Location has failed to state a claim for breach of contract because "[t]here is no reference . . . to any specific contractual provision of the purported Commission Agreement nor is such an agreement attached." (Motion, ECF No. 14 at 19). The Court finds this argument unpersuasive.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). A plaintiff can assert the existence of an express contract by laying out its terms verbatim in the complaint, attaching a copy . . . or pleading its existence according to its legal effect." *Latraverse v. Kia Motors of Am., Inc.*, No. 10-6133, 2011 WL 3273150, at *2 (D.N.J. July 27, 2011).

This Court has specifically addressed and rejected Defendant's concerns:

Under the Federal Rules, a plaintiff is not required to include the contract with the complaint, or allege the specific provisions violated in the contract. Also, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond.

*Latraverse*, 2011 WL 3273150, at *2 (internal quotations and citation omitted); *see also Jones v. Select Portfolio Servicing, Inc.*, No. 08–973, 2008 WL 1820935, at 4 (E.D. Pa. Apr. 23, 2008) ("A plaintiff is not required to attach the subject contract to the complaint."). Thus, Defendant's argument lacks merit. While On Location did not attach the Commission Agreement or recite its terms, it referenced it by name and pled sufficient facts for Defendant to be on notice as to which agreement was at issue and how he allegedly breached it. Thus, Defendant's Motion is denied as to Count IX.

### C.  All Remaining Claims (Counts III–VIII)

Defendant challenges each of On Location's nine claims in his Motion to Dismiss (ECF No. 14), while On Location defends only three—Counts I, II and IX as addressed above, (ECF No. 25). In its Brief in Opposition, On Location allocates less than one page to address these remaining claims and cites no federal or state case law in support of its assertions. (Br. in Opp., ECF No. 25 at 14). Because On Location has not responded to Defendant's Motion to Dismiss Counts III–VIII, Defendant has waived these claims. *Bond v. J&J*, No. 21-05327, 2021 WL 6050178, at n.16 (D.N.J. Dec. 21, 2021), *aff'd*, No. 22-1127, 2022 WL 4594185 (3d Cir. Sept. 30, 2022); *see, e.g.*, *Ferrante v. Amgen, Inc.*, No. 13-07344, 2014 WL 1092555, at *7 (D.N.J. Mar. 18, 2014) ("Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed.").

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 14) is **GRANTED** in part and **DENIED** in part. The Motion is granted as to Counts III–VIII and denied as to Counts I (DTSA), II (NJTSA), and IX (Breach of Contract). An appropriate Order will be entered.


**Christine P. O'Hearn**
**United States District Judge**